Ml*. Justice Peat
delivered the opinion of the court.
The material facts in the case, as stated in the bill, are the following:
The parties were married on the 19th of December, 1832. Previous to the marriage, and at the request of the appellee, the appellant made, executed and delivered the following contract:
“ Whereas, a marriage contract has taken place between myself and Mrs. Phoebe Sims, and it being desirable to make the property safe which said Phoebe Sims is now in possession of, I do hereby agree, to and with the said Phoebe Sims, to relinquish all right which I may have, after marriage, of the liability of said property being taken for any debt which I now owe;, neither do I wish or pretend to hold any claim to said property, inasmuch as the property was made by the said Phoebe Sims and her deceased husband. And I further bind myself to be a good and faithful, and affectionate husband through life, and promote her interest in every way possible. Given under my hand and seal, the 19th December, 1832.”
It is farther stated that, from the day subsequent to the marriage, the appellant became cross and ill natured to his wife; that she bore his ill treatment and abusive language for several weeks, until it became insupportable, when she left his house and sought shelter with her relations, where she has ever since resided.
The bill concludes with a prayer for a perpetual injunction against the appellant intermeddling with her separate estate, and that the same may be placed in the hands of a trustee for her sole use; and for further relief, &c.”
The appellant, in his answer, admits the marriage as above stated, and the execution and delivery of the contract. He denies that he ever became cross or ill natured to the appellee, or that he ever treated her in any other manner than with the utmost affection and kindness.
He further states, that after she had left his bed and board, he has frequently been to see her, and in the language of persuasion and entreaty, tried to induce her to return and live with him; and that she has rejected his overtures of reconciliation with insult and disdain.
*753 And he also states, that he never had any wish or intention to remove, scatter, or dispose of any of the property secured to the appellee under the contract above stated, and prays to be here dismissed.
Upon the hearing of the cause in the court below, the chancellor made a decree for the appellee, from which an appeal was taken to this court.
The first objection to the proceedings below is, that the appel-lee being a feme covert, exhibited her bill alone against her husband. No doubt the wife was under a legal incapacity to bring a suit alone against her husband, and should have prosecuted her claim through the intervention of a porchein ami; yet when the incapacity appeared upon the face of the bill, as in 'the present case, the defendant must take advantage of it by demurrer. Coop. Eq. Plead. 163. The defendant having answered, the objection comes too late. It was urged by counsel, that the right of demurrer having been reserved in the answer, it was competent for them to make any defence that could have been made under a demurrer filed. We have found no authority to sustain this position; and we deem it a direct violation of the well settled rule, which precludes a party from demurring and answering to the same part, or the whole of a bill.
It is further objected that the appellee, in abandoning her husband, has done so in her own wrong, there being no cruel treatment, or threatened, violence, alleged or proved, which would authorise such a withdrawal on her part, or the mterposition-of a court of equity.
The unkindness shown in this case, taken in its most aggravated aspect, is but occasional sallies of passion and petulance of manners. It is not pretended that he ever offered her violence or threatened it, or that at any time she has felt apprehensive for her personal safety.
To justify the wife in leaving the bed and board of her husband, on account of cruel treatment, there must be a reasonable apprehension of bodily hurt. Mere austerity of temper, petulance of manners, rudeness of language, a want of civil attention, even occasional sallies of passion, if they do not threaten bodily *754 harm, do not amount to that cruelty against which the law can relieve. The wife must disarm such a disposition in the husband by the weapon of kindness. 2 Kent’s Com. 126.
There being, then, from the facts and evidence in this case, no reasonable apprehension on the part of the wife of bodily harm from her husband, her abandonment of him presents no cause for a separate maintenance, which a court of equity can entertain.
Even if the Avife had had a separate provision decreed to her on account of the cruelty of her husband, it would be discontinued, if the husband should bona fide offer to cohabit with her and undertake to treat her kindly for the future. Clancey, 572.
The appellant in this case has again and again invited his Avife to return, and promised her the most kind and affectionate treatment; and the only reason she assigns for her refusal to comply Avith his solicitations, is that her uncle Congar said it Avould injure their cause.
It is a just conclusion that from the law and facts here stated, that had there been a separate maintenance decreed in favor of the appellee in this case, upon just grounds of cruel treatment, it would be discontinued upon the evidence here adduced; for the reason that in such cases courts of equity will afford the wife no aid whatever to continue her separation from her husband, as it is deemed subversive of the true policy of the matrimonial law and destructive of the best interests of society. 2 Story’s Equity, 651.
The only further objection to the proceedings in the court below, which we deem it necessary to examine is, that the appellant, Avho it is said Avas trustee by operation of law under the marriage contract, has been removed without just cause.
We take it to be the settled law, that Avhen no trustee is named in a marriage contract, the husband is by operation of laAv constituted the trustee, and as such is entitled to the possession of the trust property. Clancey, 256-7.
The appellant, then, in this case, became by operation: of law, the trustee of the wife under the marriage contract, and entitled to the possession of the trust property; and should not have been *755 removed, unless he had abused his trust. It is not pretended that he has wasted the estate, or threatened to make any improper use of it. But on the contrary, it is proved in support of the answer on this point, that he has in the most prudent and laborious manner, cultivated and enhanced its value, and his character is well established for integrity, temperance, and industry.
It is, however, urged by the counsel of the appellee, that the statement in the answer of the circumstances under which the contract was made, and the intention of the parties, made too in response to the bill, constitutes on the part of the appellant a claim adverse to the trust, and therefore disqualifies him to act as trustee.
The trustee has given his construction to the contract, it is true; but he obtrudes upon the court no claim inconsistent with a proper interpretation of it, however widely it may differ from what the parties designed it to be. And whatever may be his construction of the contract, so long as it is unaccompanied by any overt act incompatible with the true construction of it, no cause'on that account is presented for his removal.
In short, if his character be fair and his habits exemplary, a court of equity will not interpose to remove him without an actual breach of trust, which must consist of some act inconsistent with his duty as trustee.
Upon these grounds we are of opinion, that the decree of the court below should be reversed.